UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EARNESTINE C KEITH, } | |
| } | |
| Plaintiff, } | |
| } | |
| vs. } | CASE NO. CV 03-B-3184-S |
| } | |
| CITY OF LIPSCOMB, ALABAMA, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

This case is before the court on defendant's Motion to Dismiss Amended Complaint. (Doc. 17.)[1] Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the defendant's Motion to dismiss is due to be granted in part and denied in part.

Plaintiff filed this action on November 28, 2003, asserting six claims against the City of Lipscomb ("City", "Lipscomb") and Helen Pettigrew ("Pettigrew"), President of the City Council of the City of Lipscomb. (Doc.1.) Plaintiff's initial claims included federal claims under 42 U.S.C. § 1983 for violations of her rights to substantive due process, procedural due process, and equal protection, as well as state law claims for breach of contract, defamation, and intentional interference with her business and contractual relationship with the City. (Id.) In response to defendants' first Motion to

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Dismiss, (doc. 5), the court ordered plaintiff to file an amended complaint, and denied the Motion without prejudice to rasing the same grounds in opposition to plaintiff's amended complaint. (Doc.13.) In her Amended Complaint, plaintiff alleges federal claims under 42 U.S.C. § 1983 for violation of her rights to procedural due process and equal protection, as well as claims for wrongful termination and breach of contract under Alabama Law. (Doc. 14.) Helen Pettigrew was not named as a defendant in plaintiff's Amended Complaint. (*Id.*)

## I.   FACTUAL ALLEGATIONS

Plaintiff's claims arise from her alleged termination from employment with the City of Lipscomb. (See generally, Amended Compl., Doc. 14.) Plaintiff alleges that she was personally hired by Mayor Albert Mason in October of 2000 as his Administrative Assistant, for "as long as he was Mayor of Lipscomb." (Doc. 14, unnumbered p. 2, ¶¶ 7-8.) Plaintiff claims to have discussed her potential employment with Mason on several occasions prior to her alleged start date of October 11, 2000. (Id., ¶¶ 6, 9.) She alleges that she "specifically requested, bargained for and eventually accepted. . . an hourly wage of $13.50 per hour and Mayor Mason agreed to this salary." (Id., ¶ 9.) However, after beginning full-time employment on or about October 11, 2000, plaintiff claims that she was not paid in a timely manner. (Id., ¶¶ 6, 10.) She alleges that "in an attempt to get paid for work already performed Plaintiff agreed under duress to accept a lower salary of $11.50 per hour. However, Plaintiff was still not paid until February, 2001, for full-time

work she rendered from October to December 2000, as Mayer Mason's Administrative Assistant." (Amended Compl., unnumbered pp. 2-3, ¶ 10.)

In mid-February, 2001, plaintiff claims that the City Council "appointed" her to the post of Acting City Clerk/Treasurer of the City of Lipscomb. (Amended Compl., unnumbered p. 3, ¶ 12.) Plaintiff allegedly remained employed with the City throughout the year of 2001 without receiving any reprimand or unsatisfactory employment rating. (Id., ¶¶ 13, 16.) Then on January 4, 2002, "the City Council of the City of Lipscomb purported to convene an official meeting and purportedly voted to put Plaintiff on Administrative Leave without Pay pending an examination into Plaintiff's job performance. Plaintiff was removed from City Hall and her locks were changed so that she could not get into her office." (Id., unnumbered p. 4, ¶ 18.) On January 5, 2002, the City Council "purported to convene an official meeting in which it purportedly voted to terminate Plaintiff from all employment with the City of Lipscomb." (Id., ¶ 19.) Plaintiff claims that she was not given an opportunity to learn the reasons the City Council relied on in terminating her or to appear or speak at the meeting to rebut those purported reasons. (Amended Compl., unnumbered pp. 4-5, ¶¶ 19-20.) After she was terminated, she claims that she was told not to return to City Hall and all locks were changed so that she could not get into her office to perform her job. (Id., unnumbered p. 4, ¶ 19.)

## II.   STANDARD OF REVIEW

The standard for deciding a motion to dismiss is well-settled in this Circuit:

> When reviewing the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), this Court must accept the allegations set forth in the complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), *see also, Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986)("We may not affirm unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.").

*Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993); *see also Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994). Thus, a claim may be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts consistent with the allegations. *Hishon*, 467 U.S. at 73, 104 S. Ct. at 2232-33; *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957).

Despite the fact that plaintiff alleges claims under 42 U.S.C. § 1983, her Amended Complaint is not subject to a heightened pleading standard. In its Order dated August 12, 2004, this Court stated:

> As noted in *McCain v. Scott*, 9 F. Supp. 2d 1365, 1369 (N.D. Ga. 1998):
>
> In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167-68 (1993), the Supreme Court held that in civil rights actions against municipal corporations courts may not impose a heightened pleading standard above the requirement of Fed. R. Civ. P. 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court of Appeals for the Eleventh Circuit, however, noting that the Supreme Court did not extend its holding to cases involving individual government officials, with respect to whom a qualified immunity defense may be available, has specifically declined to extend *Leatherman* to 42 U.S.C. § 1983 civil rights cases raising a qualified immunity issue.

(Doc. 13.) Therefore, "only a short and plain statement of the claim showing that the pleader is entitled to relief " is necessary. Fed. R. Civ. P. Rule 8(a)(2).

**III.   FEDERAL CLAIMS**

Keith asserts claims against the City of Lipscomb for procedural due process and equal protection violations, both under 42 U.S.C. § 1983.  While it is well-established that the City cannot be held liable for the conduct of its council persons on the basis on *respondeat superior*, a municipality is directly liable under § 1983 to a plaintiff whose constitutional injury was caused by a municipal policy or custom.  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160 (1993)*; Monell v. New York City Dept. Of Social Services*, 436 U.S. 658, at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Therefore, to state a claim against a municipality under 42 U.S.C. § 1983, plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury.  *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).   The *Monell* requirement is clearly satisfied by rules and policies formally adopted by a city but, in certain circumstances, liability may also be imposed for a one-time decision by a municipal policymaker.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, (1986).  In *Pembaur*, the Court states:

> No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy.
> . . .

> If the decision to adopt the particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.
> . . .
>
> We hold that municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 481-83 (internal citations omitted).

The City Council clearly qualifies as a municipal policymaker. Furthermore, plaintiff contends that defendant Lipscomb was not under any public merit or civil service system at the time plaintiff was terminated and that, pursuant to Ordinance 163 of the City of Lipscomb, the City Council possessed the final and exclusive power to terminate her. (Pl.'s Response, unnumbered p. 2.) Thus, the hiring decision made by the City Council constituted a "policy" attributable to the municipality itself. See *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404-406, 117 S.Ct. 1382, 1388-89 (1997). Municipal liability will only be triggered however, if the decision itself is found to be unconstitutional. Plaintiff alleges unconstitutionality on two grounds: violation of her right to procedural due process, and violation of her right to equal protection of the laws.

### A.   Due Process

Plaintiff's claim under the Due Process Clause is for violation of her procedural

rights. Public employees having a property right in continued employment cannot be deprived of that property right by the state without due process. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 537 (1985). Defendant contends that plaintiff has not stated a claim for procedural due process violation because she did not have a property right in her continued employment with the City of Lipscomb. (Def.'s Br. in Support, p. 4-5.)

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* at 538 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 576-578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Alabama is an "employment at will" state. "[E]mployment-at-will is not a property interest that requires due process before removal." *Williams v. Walker*, 526 So.2d 576, 577 (Ala. 1998), *see Shuford v. Alabama State Bd. of Educ.*, 978 F. Supp. 1008, 1023 (M.D. Ala. 1997) (citing *Green v. City of Hamilton Housing Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991)). The fundamental principal of employment at will is that the employment relationship is terminable at any time, by either party with or without cause or justification, and for any reason. *Hoffman-LaRoche, Inc. v. Campbell*, 512 So.2d 725, 728 (Ala. 1987). However, at-will status can be modified by contract or by law.

The law within the Eleventh Circuit generally holds that a public employee has a property interest in her employment if 'existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement." *Board of*

*Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78 (1972). More specifically, "a public employee has a property interest in continued employment if state law or local ordinance in any way 'limits the power of the appointing body to dismiss an employee.'" *Ross v. Clayton County*, 173 F.3d 1305, 1307 (11th Cir. 1999) (quoting *Barnett v. Housing Auth. of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir. 1983), *overruled on other grounds by McKinney v. Pate*, 20 F.2d 1550, 1558 (11th Cir. 1994)).

Plaintiff alleges that the City Council **"appointed"** her to the office of Acting City Clerk pursuant to Ala. Code 1975 § 11-43-4,[2] and that, therefore, Ala. Code 1975 § 11-43-160[3] entitles her to a hearing prior to being terminated. If plaintiff was appointed to the office of City Clerk by the City Council, as she alleges, then § 11-43-160 limits the power of the City Council to dismiss her, thus modifying her at-will status.

It is well-established that an employee's at-will status can be modified by an employer's adoption of an employee handbook. *Hoffman-LaRoche, Inc. V. Campbell*,

---

[2] Ala. Code 1975 § 11-43-4 provides in pertinent part:

> In cities having a population of less than 6,000 and in towns, the council shall *elect* a clerk and fix the salary and term of office... The clerk and such other officers *elected* by the council shall served until their successor or successors are elected and qualified.

[3] Ala. Code 1975 § 11-43-160 provides in pertinent part:

> Any person *appointed* to office in any city or town may, for cause, after a hearing, be removed by the officer making the appointment.
>
> The city council may remove... any such person in the several departments for incompetency, malfeasance or nonfeasance in office and for conduct detrimental to the good order or discipline, including habitual neglect of duty.

512 So.2d 725, 728 (Ala. 1987).  However, "to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy."  *Id.* at 734.

If Lipscomb has a handbook purporting to limit the City's ability to terminate its employees which is sufficiently specific, plaintiff's at will status may have been modified.  However, regarding the personnel policies of the City of Lipscomb, plaintiff alleges only that:

> It is the custom, practice and policy of the City of Lipscomb to utilize materials and publications from the Alabama League of Municipalities as the employment and human resource policies of Lipscomb, and Lipscomb has historically followed such employment practices.  Defendant Lipscomb has on more than one occasion afforded a due process hearing to other similarly situated Lipscomb municipal officers and employees [including a male Chief of Police and female Clerk/Treasurer], that were terminated, yet Defendant refused to follow its adopted policy as relates to Plaintiff.

(Amended Compl., unnumbered pp. 3-4, ¶ 17.)  Plaintiff has not alleged the existence of any written manual or policy formally adopted by the City, or given any details as to the specific municipal policy or policies which allegedly gave her the right to a hearing prior to termination.  Therefore, plaintiff has not sufficiently alleged that her at-will status was modified by the City's personnel policies.

However, the allegations in the Amended Complaint, if true, establish that plaintiff had a property right in her alleged employment with defendant because her employment-at-will status was modified by Ala. Code § 11-43-160.  Plaintiff has also alleged that she was terminated from that employment without being given an opportunity for a hearing.

9

Because the allegations in the Amended Complaint, if true, establish a deprivation of plaintiff's right to due process, and that the deprivation was caused by a municipal policy or custom, defendant's Motion to Dismiss that claim is due to be denied.[4]

### B. Equal Protection

Plaintiff also claims that the defendant violated her right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. In general, to establish an equal protection claim, a plaintiff must show that the defendant: (1) treated her differently from other similarly-situated persons, (2) for the purpose of discriminating against her. *GJR Investments, Inc.*, 132 F.3d 1359, 1367-68 (11th Cir. 1998); see also *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402 (1944).

Plaintiff alleges that "Defendant Lipscomb has on more than one occasion afforded a due process hearing to other similarly situated Lipscomb municipal officers and employees [including a male Chief of Police and female Clerk/Treasurer], that were terminated, yet Defendant refused to follow its adopted policy as relates to Plaintiff." (Amended Compl., unnumbered p. 4, ¶ 17.) The Amended Complaint goes on to state that "Defendant's action in denying Plaintiff any opportunity for a disciplinary hearing. . . while affording other employees such an opportunity was clearly in violation of

---

[4] Of course, the facts after discovery may establish that plaintiff was not "appointed" or "elected" to any office, and case law may further establish that she was not entitled to a hearing or to be removed only for cause. However, at this juncture, on a motion to dismiss, the Court is of the opinion that the allegations in the Amended Complaint are sufficient to state a claim for a violation of procedural due process under § 1983.

established policy and practice, was. . . arbitrary and unreasonable, illegal and unjust, and as such, violated plaintiff's right to equal protection." (Id., unnumbered p. 6, ¶ 25.)

Plaintiff specifically alleges that a similarly situated female Clerk/Treasurer was afforded a hearing prior to termination. However, the Amended Complaint fails to allege that the City Council acted with discriminatory intent when it denied her the opportunity for a hearing.

In *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402 (1944), the Supreme Court noted:

> The lack of any allegations in the Complaint here, tending to show a purposeful discrimination. . . is not supplied by the opprobrious epithets 'willful' and 'malicious' . . ., or by characterizing [the defendant's actions] as an unequal, unjust, and oppressive administration of the laws of Illinois. The epithets disclose nothing as to the purpose or consequence of [defendant's actions]. . . Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws. . .

Likewise, the plaintiff in *GJR* alleged that the defendants' actions were "arbitrary and capricious in that [they] acted with improper motive, without reason, or upon a reason that was merely pretextual." 132 F.3d at 1368. Noting that these allegations were "uncannily similar to those the Supreme Court rejected in *Snowden*," the Eleventh Circuit found them to be deficient.[5] *Id.* In the instant case, plaintiff alleges only that defendant's actions in terminating her without affording her a hearing were "arbitrary and

---

[5] Though the court in *GJR* held that a heightened pleading standard applies in § 1983 cases, it found that "[GJR's Complaint] simply fails to state an equal protection claim, even without the additional hurdle of the heightened pleading standard."

unreasonable, illegal and unjust." (Amended Compl., unnumbered p. 6, ¶ 25.) These allegations are similar to those found to be deficient in *Snowden* and *GJR*, and are insufficient for the same reason. Therefore, plaintiff's claim for violation of equal protection rights, Count II of the Amended Complaint, is due to be dismissed.

**IV.    STATE-LAW CLAIMS**

    **A.    Wrongful Termination**

In order to maintain a action against a municipality, a plaintiff must allege conduct which is actionable under Ala. Code § 11-47-190, which sets forth the grounds for municipal liability. § 11-47-190 states, in part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty. . .

Plaintiff alleges that the City Council persons' actions in terminating her employment were "arbitrary and unreasonable, illegal and unjust." (Amended Compl., unnumbered p. 6, ¶ 25.) She has not alleged any negligence, carelessness or unskillfulness on the part of any agent of the City of Lipscomb. (Doc. 14 ¶¶ 18-20). Therefore, she has not stated a claim under § 11-47-190.

Furthermore, under the principles of respondeat superior, "if the agent is immune from liability, the principal cannot be held liable either." *Gore v. City of Hoover*, 559 So.2d 163, 165 (Ala. 1990). Therefore, plaintiff cannot recover against

the City on a *respondeat superior* theory if its agents, the City Council members, are entitled to immunity.

It is well-established that city officials are absolutely immune from any suits attacking their legislative judgement. See *Tutwiler Drug Co., Inc. v. City of Birmingham*, 418 So.2d 102 (Ala. 1982). Hiring and firing city personnel is not a legislative function, however, therefore absolute legislative immunity is not appropriate in this case. See *Marnon v. City of Dothan*, 677 So.2d 755, 760-61 (Ala. Civ. App. 1996.)

Defendant contends that plaintiff's wrongful termination claim is nevertheless barred by the doctrine of discretionary immunity. (Def.'s Br. in Support, p. 18.) City officials acting within the general scope of their authority have a qualified or discretionary immunity and are not subject to tort liability for an administrative act or omission; they are immune from suit unless they violate clearly established law. *Ex Parte City of Birmingham*, 624 So.2d 1018, 1021 (Ala.1993). The City Council was within its power, pursuant to Ala. Code § 11-43-4, in hiring plaintiff as City Clerk; however, if the City Council appointed plaintiff as Acting Clerk as previously discussed, § 11-43-160 arguably limits its power of removal by requiring a pre-termination hearing. That section also states that removal must be "for cause." If, as plaintiff alleges, the City Council removed her without "cause" and without affording her a hearing, it did so in violation of clearly established Alabama law, and

its members are not entitled to immunity for claims arising from her removal. Therefore, the City may be liable on a *respondeat superior* theory for plaintiff's alleged wrongful termination.

Defendant contends that the wrongful termination claim is nevertheless due to be dismissed because plaintiff has failed to comply with the applicable notice statute. Ala. Code § 11-47-192 states:

> No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

Furthermore, "[c]laims [against the municipality] for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred." § 11-47-23 Code of Alabama (1975). It is well established that the six month time limitation applies to all tort actions filed pursuant to §§ 11-47-190 and 11-47-192. *Poe v. Grove Hill Memorial Hosp. Bd.*, 441 So.2d 861, 863 (Ala. 1983).

Plaintiff sent two letters to Defendant's attorney giving notice of her claims within the prescribed time period.[6] However, because neither letter included a sworn statement, they do not satisfy the notice requirements of the statute. The filing of a lawsuit is sufficient notice to satisfy the requirements of § 11-47-192. *Hill v. City of Huntsville*, 590 So.2d 876, 876 (Ala. 1991). However, plaintiff's right of action

---

[6] The letters were dated February 5, 2003 and July 22, 2003.

14

accrued upon her termination, on January 5, 2002, and she did not file this action until November 26, 2003, almost two years later. The sixth month presentation requirement for torts is mandatory, and when a party fails to give notice, the action is barred. *Hill v. City of Huntsville*, 590 So. 2d 876, 876-77 (Ala. 1991). Furthermore, in its Order of August 12, 2004, the court stated that "absent evidence showing plaintiff filed a claim with the clerk of the city within six months as required by Ala. Code §§ 11-47-192 and 11-47-23, all tort claims are due to be dismissed." (Doc. 13.) The court went on to note that "[u]nless plaintiff has such evidence, she should not include any tort claims against the City in her proposed amended complaint." (*Id.*) Plaintiff does not attempt to show that she has fulfilled the notice requirements in her Amended Complaint or in her Opposition to Defendant's Motion to Dismiss. Therefore, her claim for wrongful termination is due to be dismissed.

**B.     Breach of Contract**

Plaintiff claims an employment contract with Defendant Lipscomb on two grounds: (1) she claims to have entered into an employment contract with the mayor to serve as his administrative assistant, and (2) she argues that a contract should be implied from the City's personnel policies. Plaintiff claims that the mayor offered and she accepted a "full-time job [as administrative assistant] as long as he was Mayor of Lipscomb" and that her termination was in breach of the resulting contract. (Doc. 14 ¶ 31.) However, defendant contends that the alleged contract was not enforceable because

15

it was not in writing. (Doc. 21 at 13). "Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting." Code of Alabama, § 11-47-5 (1975). In addition, the statute of frauds requires that "every agreement which, by its terms, is not to be performed within one year from the making thereof" is unenforceable if not in writing. Code of Alabama, § 8-9-2(1) (1975). Plaintiff fails to allege that there was a writing evidencing the contract.

A contract of employment may be implied when the employer has adopted an employee handbook containing specific sections as to termination of permanent employees and procedures which are to be followed to effect such termination. *Morrow v. Town of Littleville*, 576 So.2d 210, 212-13 (Ala. 1991); see also *Hardric v. City of Stevenson*, 843 So.2d 206, 209 (Ala. Civ. App. 2002). However, "to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy." *Hoffman-LaRoche*, supra, 512 So.2d 725, 734 (Ala. 1987).

In her Amended Complaint, plaintiff alleges that:

> It is the custom, practice and policy of the City of Lipscomb to utilize materials and publications from the Alabama League of Municipalities as the employment and human resource policies of Lipscomb, and Lipscomb has historically followed such employment procedures.

(Doc. 14 ¶ 17.) Plaintiff does not that Defendant Lipscomb has a written employee

handbook or formalized personnel policy and does not point to any specific municipal policy regarding termination of city employees. Accordingly, her claim for breach of contract is due to be dismissed.

## V. **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss is due to be granted in part and denied in part. An appropriate Order will be entered contemporaneously herewith.

**DONE** this the 24th day of March, 2006.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE